**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

STEPHEN DEBIEN,

      Plaintiff,

v.

SERVICESOURCE INTERNATIONAL, INC.
ANDREW M. BAKER,
JANE OKUN BOMBA,
JOHN FERRON,
JOHN HARRIS,
JOHN A. MEYER,
GARY B. MOORE,
RICH WALKER,

      Defendants.

---

**COMPLAINT AND JURY DEMAND
FOR VIOLATIONS OF FEDERAL SECURITIES LAWS**

---

Plaintiff, Stephen Debien ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to his, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1. Plaintiff brings this stockholder action against ServiceSource International, Inc. ("ServiceSource" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants, and together with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to Concentrix Corporation ("Parent"), through merger vehicle Concentrix Merger Sub Inc. Inc. ("Merger Sub," and together with Parent, "Concentrix") as a result of an unfair process, and to enjoin an upcoming vote on a proposed all cash transaction (the "Proposed Transaction").

2. The terms of the Proposed Transaction were memorialized in a May 6, 2022 filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, ServiceSource will become an indirect wholly-owned subsidiary of Concentrix. In consideration for the proposed merger, ServiceSource shareholders will have their shares cancelled and receive $1.50 per share in cash, without interest.

3. Thereafter, on June 2, 2022, ServiceSource filed a Preliminary Proxy Statement on Schedule PREM14A (the "Preliminary Proxy Statement") with the SEC in support of the Proposed Transaction.

4. The Proposed Transaction is unfair for a number of other reasons. Significantly, the Preliminary Proxy Statement describes an insufficient process in which the Board rushed through an inadequate "sales process" in which no special committee of independent and disinterested directors was created to run the sales process.

1

5.      Next, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff, as well as the Company's public stockholders.  For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

6.      In violation of the Exchange Act, on June 2, 2022, Defendants caused to be filed the materially deficient Preliminary Proxy Statement.  The Preliminary Proxy Statement is materially deficient and is thus in violation of the Exchange Act.  As detailed below, the Preliminary Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for ServiceSource, provided by ServiceSource management to the Board's financial advisor Centerview Partners LLC (" Centerview"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinion created by Centerview and provided to the Company and the Board.

7.      Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.  This action seeks to enjoin the Proposed Transaction.

## PARTIES

8.      Plaintiff is a citizen of Colorado and, at all times relevant hereto, has been a ServiceSource stockholder.

9.      Defendant ServiceSource International, Inc. provides business process-as-a-service solutions worldwide. ServiceSource is incorporated under the laws of the State of Delaware and has its principal place of business at 707 17th Street, 25th Floor, Denver, CO 80202.  Shares of ServiceSource common stock are traded on the NasdaqGS Stock Exchange under the symbol "SREV."

10. Defendant Andrew M. Baker ("Baker") has been a Director of the Company at all relevant times.

11. Defendant Jane Okun Bomba ("Bomba") has been a Director of the Company at all relevant times.

12. Defendant John Ferron ("Ferron") has been a director of the Company at all relevant times.

13. Defendant John Harris ("Harris") has been a director of the Company at all relevant times.

14. Defendant John A. Meyer ("Meyer") has been a director of the Company at all relevant times.

15. Defendant Gary B. Moore ("Moore") has been a director of the Company at all relevant times. In addition, Moore serves as the Company's Chief Executive Officer ("CEO") and Chairman of the Board of Directors.

16. Defendant Rich Walker ("Walker") has been a director of the Company at all relevant times.

17. Defendants identified in ¶¶ 10 - 16 are collectively referred to as the "Individual Defendants."

18. Concentrix provides CX process optimization, technology innovation, front- and back-office automation, analytics, and business transformation services. Parent is headquartered in Freemont, CA and shares of their common stock are traded on the NasdaqGS under the symbol "CNXC."

19. Merger Sub is a wholly owned subsidiary of Parent created to effectuate the Proposed Transaction.

**JURISDICTION AND VENUE**

20. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act. This action is not a collusive one to

confer jurisdiction on a court of the United States, which it would not otherwise have. The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

21. Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

22. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, have extensive contacts within this District; for example, the Company maintains its Principal Offices in this District.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

23. ServiceSource International, Inc. provides business process-as-a-service solutions worldwide. The company provides digital solutions, including demand qualification, demand conversion, and account management; customer success solutions, such as onboarding, adoption, and renewals management; CJX solutions; and channel management solutions comprise partner recruitment, partner onboarding and enablement, and partner success management. It also offers sales performance analysis, business case, pricing and contract structuring, data integration, implementation, launch, performance and execution, and client benchmarking and continuous improvement solutions. The Company sells its solutions through sales organization; and serves cloud and SaaS, software and hardware, medical device and diagnostic equipment, and industrial IoT industries. ServiceSource International, Inc. was founded in 1999 and is headquartered in Denver, Colorado.

24. The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated sustained and solid financial performance. For example, in the February 23, 2022

4

Earnings Call announcing its 2021 Q4 and 2021 year-end financial results, the Company highlighted such milestones as GAAP revenue of $55.8 million, compared with $51.1 million reported for Q4 2020. Additionally, the company reported Adjusted EBITDA, a non-GAAP financial measure, was $8.1 million, compared with $4.8 million reported for Q4 2020.

25.     Speaking on these positive results, CEO Defendant Moore commented on the Company's positive results as follows, "We closed the year on a strong note, with revenue growth and profitability in the fourth quarter being at multi-year highs," …….. "Our unwavering focus on executing our brand promise is enabling our clients to accelerate their go-to-market strategies and is positioning us as a strategic partner supporting their transformation journeys. The progress and performance we demonstrated throughout the year give us confidence in our long-term financial priorities and our ability to deliver on them. We remain focused on our strategy and the value we believe successful execution can create for all of our stakeholders."

26.     These results are not an anomaly, but rather, are indicative of a trend of continued success and future potential success by ServiceSource. Clearly, based upon these positive results and outlook, the Company is likely to have tremendous future success.

27.     Despite this upward trajectory, the Individual Defendants have caused ServiceSource to enter into the Proposed Transaction without providing requisite information to ServiceSource stockholders such as Plaintiff.

*The Flawed Sales Process*

28.     As detailed in the Preliminary Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

29.     The Preliminary Proxy Statement is silent as to whether a committee of the Board composed of disinterested and independent members was created to run the sales process, and if so, its specific powers.

30.     Moreover, the Preliminary Proxy Statement is silent as to the nature of any existing confidentiality agreement entered into between the Company and Concentrix and whether this agreement differed from any other agreement with potentially interested third parties discussed and/or not specifically mentioned by the Preliminary Proxy Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

31.     It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

*The Proposed Transaction*

32.     On May 9, 2022, ServiceSource and Concentrix issued a joint press release announcing the Proposed Transaction. The press release stated, in relevant part:

> **DENVER--(BUSINESS WIRE)--**May 9, 2022-- ServiceSource International, Inc. (NASDAQ: SREV), the customer journey experience company, today announced it has entered into a definitive merger agreement pursuant to which Concentrix Corporation (NASDAQ: CNXC), a leading global provider of customer experience (CX) services and technologies, will acquire ServiceSource in an all-cash transaction. ServiceSource stockholders will receive $1.50 per share in cash for each issued and outstanding share of common stock they own. The purchase price represents a 47% premium to ServiceSource's unaffected closing stock price on May 6, 2022.
>
> "We are delighted to join forces with Concentrix and the opportunity it provides for us to execute on our strategy to drive client success by bringing the world's greatest brands closer to their customers," commented Gary B. Moore, ServiceSource's chairman and chief executive officer. "This transaction marks an important milestone in our 20-plus year history and is a testament to the dedication of our employees, the value of our differentiated solutions in the marketplace, and the opportunity to take the business to new heights with a partner that has shared values and culture. I am confident that our world-class employees will gain

expanded career and professional growth opportunities as part of a much larger, industry-leading global organization, and I am equally confident that our clients will be even better served through the breadth, depth, and scope of our combined capabilities and scale. We look forward to a seamless transition and executing on a shared vision of the future of CX."

John Harris, ServiceSource's Lead Independent Director, said, "The board of directors is pleased to have reached this agreement, which represents the culmination of a robust process and a comprehensive review of strategic alternatives with our outside legal and financial advisors. This transaction will provide certain and immediate value to our stockholders at a 47% premium."

*Potential Conflicts of Interest*

33. The breakdown of the benefits of the deal indicate that ServiceSource insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of ServiceSource.

34. Company insiders, currently own large, illiquid portions of Company stock all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company. Notably, the Preliminary Proxy Statement fails to provide an accounting of the merger consideration which such shares will be exchanged for as follows:

| Stockholders | Number of shares of ServiceSource Common Stock | Percent of Class |
|---|---|---|
| Directors | | |
| Gary B. Moore | 2,555,491 | 2.5% |
| Andrew M. Baker | 217,975 | * |

| | | |
|---|---:|---:|
| Jane Okun Bomba | 217,975 | * |
| John R. Ferron | 450,000 | * |
| John R. Harris | 300,000 | * |
| John A. Meyer | 217,975 | * |
| Richard G. Walker | 475,177 | * |
| Current Named Executive Officers ("NEOs") who are not directors | | |
| Michael Naughton | 302,041 | * |
| Chad Lyne | 427,172 | * |
| All directors and current executive officers as a group (9 persons) | 5,163,806 | 5.1% |

35. Additionally, Company insiders, currently own large amounts of company options, restricted stock units, and other equity awards, all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company. Notably, the Preliminary Proxy Statement fails to provide an accounting of the amounts of equity awards owned by Company insiders nor of the specific amount of merger consideration such options will be exchanged for upon the consummation of the Proposed Transaction:

| Named Executive Officer | Unvested Options | | Unvested RSUs | | Unvested PSUs | | Total |
| | Shares (#) | Value ($) | Shares (#) | Value ($) | Shares (#) | Value ($) | ($) |
|---|---|---|---|---|---|---|---|
| Gary B. Moore | — | — | 974,613 | 1,461,920 | 959,245 | 1,438,868 | 2,900,788 |

| Mike Naughton | 16,666 | 9,666 | 429,166 | 643,749 | 180,000 | 270,000 | 923,415 |
| Chad W. Lyne | 50,000 | 29,000 | 404,165 | 606,248 | 180,000 | 270,000 | 905,248 |

36.     Moreover, certain employment agreements with certain ServiceSource executives, entitle such executives to severance packages should their employment be terminated under certain circumstances. These 'golden parachute' packages are significant, and will grant each director or officer entitled to them millions of dollars, compensation not shared by Plaintiff and will be paid out as follows:

| Name[1] | Cash ($)[2] | Health Care Benefits ($)[3] | Equity ($)[4] | Total ($)[5] |
|---|---|---|---|---|
| Gary B. Moore *(Chief Executive Officer)* | 1,562,500 | 21,724 | 2,900,788 | 4,485,012 |
| Mike Naughton *(Chief Operating Officer)* | 645,265 | — | 923,415 | 1,568,680 |
| Chad W. Lyne *(Chief Financial Officer)* | 700,000 | 26,421 | 905,248 | 1,631,669 |

37.     The Preliminary Proxy Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

38.     Thus, while the Proposed Transaction is not in the best interests of ServiceSource, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Preliminary Proxy Statement***

39.     On June 2, 2022, the ServiceSource Board and Concentrix caused to be filed with

the SEC a materially misleading and incomplete Preliminary Proxy Statement that, in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

40.     Specifically, the Preliminary Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction. In particular, the Preliminary Proxy Statement fails to disclose:

   a. Specific information regarding whether a committee of the Board was created to run the sales process composed of independent and disinterested Directors, and if so, the specific powers of that committee;

   b. Specific information regarding why the Board engaged multiple financial advisors;

   c. Whether the confidentiality agreements entered into by the Company with Concentrix differed from any other unnamed confidentiality agreement entered into between the Company and potentially interested third parties (if any), and if so, in all specific manners;

   d. All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including Concentrix, would fall away; and

10

e. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

*Omissions and/or Material Misrepresentations Concerning ServiceSource's Financial Projections*

41. The Preliminary Proxy Statement fails to provide material information concerning financial projections for ServiceSource by ServiceSource management to the Board and Centerview and relied upon by Centerview in its analyses. The Preliminary Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.

42. The Preliminary Proxy Statement should have, but fails to provide, certain information in the projections that ServiceSource management provided to the Board and Centerview. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007)

43. With regard to the *Management Projections* including both the Management Case and Alternative Case projections, prepared by ServiceSource Management, the Preliminary Proxy Statement fails to disclose material line items for the following metrics:

a. Adjusted EBITDA, including all underlying necessary metrics, adjustments, and assumptions used to compute this item;

11

      b. Unlevered Free Cash Flow, including all underlying necessary metrics, adjustments, and assumptions necessary to compute this item.

44. The Preliminary Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

45. This information is necessary to provide Plaintiff in his capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

46. Without accurate projection data presented in the Preliminary Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Centerview's financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction. As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Centerview*

47. In the Preliminary Proxy Statement, Centerview describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

48. With respect to the *Selected Public Companies Analysis*, the Preliminary Proxy Statement fails to disclose the following:

      a. The individual metrics for each company compared;

b. The specific underling values, inputs, and assumptions used to calculate Enterprise Value;

c. The specific Wall Street research analyst estimates consulted as well as the identity of the firm and analyst who issued each estimate; and

d. The underlying inputs and assumptions used to determine a reference range of 0.4x to 0.7x for calendar year 2022.

49. With respect to the *Selected Transactions Analysis* section, the Preliminary Proxy Statement fails to disclose the following:

a. The value for each selected transaction compared;

b. The date on which each selected transaction closed;

c. The specific metrics for each selected Transaction;

d. The inputs and assumptions used to EV/LTM Revenue Multiples of 0.4x to 0.8x; and

e. The number of fully-diluted outstanding shares of ServiceSource Common Stock.

50. With respect to the *Discounted Cash Flow Analysis* section, the Preliminary Proxy Statement fails to disclose the following:

a. The opportunity cost of capital for the Company;

b. The specific inputs and assumptions used to determine discount rates ranging from 13.25% to 15.50%;

c. The weighted average cost of capital for the Company;

d. The inputs, metrics, and assumptions used to determine perpetuity growth rates ranging from 0% to 3.0%;

      e. The value of stock based compensation;

      f. The exact value of the Company's net debt;

      g. The range of implied equity values for the company; and

      h. The number of fully-diluted outstanding shares of Common Stock.

51. With respect to the *Premiums Paid Analysis* section, the Preliminary Proxy Statement fails to disclose the following:

      a. The Companies involved in each transaction compared;

      b. The closing date of each transaction compared;

      c. The specific value of each transaction;

52. With respect to the *Stock-Based Compensation Scenarios* section, the Preliminary Proxy Statement fails to disclose the following:

      a. A complete list of the specific bases and adjustments upon which the assumptions underlying the alternative scenarios relies;

      b. The inputs, metrics, and assumptions used to derive a range of implied impact to discounted cash flow value of negative ($0.09) to ($0.25);

      c. The inputs, metrics, and assumptions used to derive discount rates ranging from 13.25% to 15.50%; and

      d. The inputs, metrics, and assumptions used to determine perpetuity growth rates ranging from 0% to 3.0%.

## FIRST COUNT

## Violations of Section 14(a) of the Exchange Act

## <u>(Against All Defendants)</u>

53. Plaintiff repeats all previous allegations as if set forth in full herein.

54. Defendants have disseminated the Preliminary Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

55. Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction. Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

56. As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

57. The Preliminary Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have

known that the Preliminary Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

58. The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

59. The Individual Defendants were at least negligent in filing a Preliminary Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Preliminary Proxy Statement not misleading.

60. The misrepresentations and omissions in the Preliminary Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the vote regarding the Proposed Transaction.

## SECOND COUNT

## Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

61. Plaintiff repeats all previous allegations as if set forth in full herein.

62. The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Preliminary Proxy Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

63. The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Preliminary Proxy Statement and nevertheless approved,

ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Preliminary Proxy Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Preliminary Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

64. The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of ServiceSource's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Preliminary Proxy Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Preliminary Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

65. The Individual Defendants acted as controlling persons of ServiceSource within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause ServiceSource to engage in the wrongful conduct complained of herein. The Individual Defendants controlled ServiceSource and all of its employees. As alleged above, ServiceSource is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A. Enjoining the Proposed Transaction;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to exercise comply with the Exchange Act and

17

disseminate a Preliminary Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: June 9, 2022                                          **BRODSKY & SMITH, LLC**

By:      */s/ Marc L. Ackerman*
Marc L. Ackerman
Two Bala Plaza, Suite 805
Bala Cynwyd, PA 19004
Phone: (610) 667-6200
Fax:    (610) 667-9029
Email: mackerman@brodskysmith.com

*Counsel for Plaintiff*